UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

KAREN M. BAILEY,

    Plaintiff,

        v.                                                                      No. 3:18-cv-00013 (WIG)

NANCY A. BERRYHILL,
Acting Commissioner of
Social Security,

    Defendant.
_____X

## RULING ON PENDING MOTIONS

This is an administrative appeal following the denial of the plaintiff, Karen M. Bailey's, application for Title II disability insurance benefits ("DIB"). It is brought pursuant to 42 U.S.C. § 405(g).[1] Plaintiff now moves for an order reversing the decision of the Commissioner of the Social Security Administration (the "Commissioner"), or in the alternative, an order remanding her case for a rehearing. [Doc. # 22]. The Commissioner, in turn, has moved for an order

---

[1] Under the Social Security Act, the "Commissioner of Social Security is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under [the Act]." 42 U.S.C. §§ 405(b)(1) and 1383(c)(1)(A). The Commissioner's authority to make such findings and decisions is delegated to administrative law judges ("ALJs"). *See* 20 C.F.R. § 404.929. Claimants can in turn appeal an ALJ's decision to the Social Security Appeals Council. *See* 20 C.F.R. § 404.967. If the appeals council declines review or affirms the ALJ opinion, the claimant may appeal to the United States district court. Section 205(g) of the Social Security Act provides that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C § 405(g).

affirming her decision. [Doc. # 25]. For the reasons set forth below, the Commissioner's decision is affirmed.

## **PROCEDURAL BACKGROUND**

Plaintiff filed her DIB application on August 28, 2013, alleging a disability onset date of July 1, 2011. Her claims were denied at both the initial and reconsideration levels. Plaintiff then requested a hearing. On July 22, 2016, a hearing was held before Administrative Law Judge Ronald Thomas (the "ALJ"). Plaintiff and a vocational expert ("VE") testified at the hearing. On October 21, 2016, the ALJ issued a decision denying Plaintiff's claim. Plaintiff timely requested review of the ALJ's decision by the Appeals Council. On November 3, 2017, the Appeals Council denied review, making the ALJ's decision the final determination of the Commissioner. This action followed.

## **THE ALJ'S DECISION**

The ALJ followed the sequential evaluation process for assessing disability claims.[2] At Step One, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date. (R. 18). At Step Two, the ALJ found the following severe impairments:

---

[2] The five steps are as follows: (1) the Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment which "meets or equals" an impairment listed in Appendix 1 of the regulations (the Listings). If so, and it meets the durational requirements, the Commissioner will consider him or her disabled, without considering vocational factors such as age, education, and work experience; (4) if not, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has the residual functional capacity to perform his or her past work; and (5) if the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work in the national economy which the claimant can perform. 20 C.F.R. § 404.1520 (a)(4)(i)-(v). The claimant bears the burden of proof on the first four steps, while the Commissioner bears the burden of proof on this last step. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014).

multiple sclerosis and asthma with shortness of breath. (R. 19). The ALJ determined that Plaintiff's carpal tunnel syndrome, left lateral epicondylitis, right ankle tendon surgery, degenerative changes of the cervical and lumbar spine, urinary frequency, gastrointestinal reflux disease, hypothyroidism, and obesity are not severe. (R. 19-22). At Step Three, the ALJ found Plaintiff's severe impairments do not meet or medically equal the severity of one of the listed impairments. (R. 13-14). Next, the ALJ determined Plaintiff retains the following residual functional capacity[3]:

> Plaintiff can perform light work except she requires an environment free from concentrated exposure to poor ventilation, dust, fumes, gases, humidity, odors, wetness, and temperature extremes. She should avoid hazards such as dangerous machinery, heights, and vibrations, but is able to drive. She may perform occasional bending, balancing, kneeling, crawling, twisting, squatting, and climbing but no climbing ladders, ropes, or scaffolds.

(R. 23). At Step Four, the ALJ relied on the testimony of the VE to conclude that Plaintiff can perform past relevant work as an office manager, a teller, and bookkeeper, and a customer service representative. (R. 28). Accordingly, the ALJ found Plaintiff is not disabled under the Social Security Act.

## **LEGAL STANDARD**

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), is performing an appellate function." *Zambrana v. Califano*, 651 F.2d 842 (2d Cir. 1981). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, [are] conclusive…." 42 U.S.C. § 405(g). Accordingly, the district court does not make a *de novo* determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. *Id.*;

---

[3] Residual functional capacity ("RFC") is the most a claimant can do in a work setting despite her limitations. 20 C.F.R. § 404.1545(a)(1).

3

*Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to ascertain whether the Commissioner applied the correct legal principles in reaching her conclusion, and whether the decision is supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). Therefore, absent legal error, a decision of the Commissioner cannot be set aside if it is supported by substantial evidence. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Further, if the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the claimant's contrary position. *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Substantial evidence must be "more than a scintilla or touch of proof here and there in the record." *Williams*, 859 F.2d at 258.

## **DISCUSSION**

Plaintiff makes several arguments in support of her motion to reverse and/or remand, which the Court will address in turn.

1. **The ALJ's Step Two Determination**

Plaintiff first argues that the ALJ should have found her lumbar and cervical degenerative impairments, her bladder condition, and her upper extremity symptoms to be severe. The Commissioner responds that Plaintiff has not established these impairments are severe.

At Step Two, the ALJ determines the "severity" of a claimant's impairments. Pursuant to the regulations, a medically determinable impairment, or a combination of impairments, is not severe "if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522. "A finding of 'not severe' should be made if the

medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" *Rosario v. Apfel*, No. 97-CV-5759, 1999 WL 294727, at *5 (quoting *Bowen v. Yuckert*, 482 U.S. 137, 154 n. 12 (1987)). "The claimant bears the burden of presenting evidence establishing severity." *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012). While the second step of the evaluation process is limited to screening out *de minimis* claims, "the mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment is not, by itself, sufficient to render a condition severe." *Id.* (internal quotation marks omitted).

Substantial evidence supports the ALJ's Step Two determination. With respect to Plaintiff's lumbar and cervical impairments, objective medical evidence simply does not establish that the condition is severe. A 2014 lumbar x-ray showed only mild degenerative changes. (R. 812). Similarly, a 2014 MRI indicated only minor degenerative changes of the thoracic spine. (R. 687-88). A 2016 MRI of the cervical spine was compared to the 2014 imaging and resulted in no evidence of progression of multiple sclerosis or active inflammation. (R. 921). In addition, notes from Plaintiff's chiropractic care show there was some improvement in Plaintiff's symptoms with treatment. (R. 338, 341, 345, 350, 354, 356, 358, 360, 361).

With respect to Plaintiff's bladder condition, Plaintiff reported being "very happy" on medication for urinary frequency. (R. 923). Treatment notes indicate she was "doing great" on medication with only "occasional urgency." (*Id.*).

Likewise, regarding Plaintiff's upper extremity symptoms, 2014 nerve conduction studies revealed largely normal findings. (R. 615). And, a 2015 nerve conduction study of the upper extremities showed normal findings "with the exception of a low ulnar CMAP amplitude on the

left." (R. 761). In addition, treatment notes show largely normal motor strength in the upper extremities. (*See* R. 764, 773, 917, 981).

In all, Plaintiff has failed to establish that these conditions result in significant work-related limitations such that the ALJ erred in not finding them severe.

In addition, "the standard for a finding of severity under Step Two of the sequential analysis is *de minimis* and is intended only to screen out the very weakest cases." *McIntyre*, 758 F.3d at 151. An AJL's finding that an impairment is not severe at Step Two is harmless error when, as here, the ALJ finds other severe impairments and continues with the sequential evaluation. *See Jones-Reid v. Astrue*, 934 F. Supp. 2d 381, 402 (D. Conn. 2012), *aff'd,* 515 F. App'x 32 (2d Cir. 2013). In such a circumstance, "because the ALJ did find several severe impairments and proceeded in the sequential process, all impairments, whether severe or not, were considered as part of the remaining steps." *Id.* Therefore, even if the ALJ had erred at Step Two, that error is harmless in this case.

2. **The RFC**

Plaintiff next argues that the ALJ's RFC assessment is not supported by substantial evidence. Specifically, she avers that the ALJ erred in his weighing of the opinion evidence. Plaintiff also maintains that the ALJ erred by failing to incorporate into the RFC limitations related to handling and fingering, pain, and urinary frequency. The Commissioner responds that the ALJ properly weighed the medical opinions, and that the record does not support any additional limitations.

*A. Weighing of Opinion Evidence*

The treating physician rule provides that a treating source's opinion on the nature or severity of a claimant's impairments will be given controlling weight when it is well-supported

by, and not inconsistent with, other substantial evidence in the record. *See* 20 C.F.R. § 404.1527(c)(2). When a treating physician's opinion is not controlling, the ALJ must consider several factors in determining how much weight it should receive. *See Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015); *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008). Those factors include "(1) the frequently, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013); 20 C.F.R. § 404.1527(c)(2). After considering these factors, the ALJ is required to "comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004). In so doing, the ALJ must provide "good reasons" for the weight assigned. *Burgess,* 537 F.3d at 129. An ALJ's failure to provide good reasons for the weight given to a treating source's opinion is grounds for remand. *Halloran*, 362 F.3d at 33. An ALJ is not required to "slavish[ly] recite[]each and every factor where the ALJ's reasoning and adherence to the regulation are clear." *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013).

Dr. Conway, Plaintiff's treating neurologist, completed a medical source statement on August 5, 2016. He opined Plaintiff could sit and stand or walk for less than two hours in an eight-hour workday. (R. 984). He found she could sit for twenty minutes at a time, and stand for twenty minutes at a time. (*Id.*). Dr. Conway opined Plaintiff would need one or two unscheduled breaks for thirty to forty-five minutes during a working day. (*Id.*). He noted that Plaintiff had a spastic gait and some incoordination of both hands. (R. 983). Dr. Conway also found Plaintiff could rarely lift ten pounds, and never lift over twenty pounds. (R. 985). He opined she could rarely twist, stoop, or crouch. (*Id.*). He opined Plaintiff would be off task

7

twenty-five percent or more of the workday, and was capable of low stress work. (R. 986). The ALJ gave this opinion little weight, reasoning that Dr. Conway's findings were inconsistent with his own treatment notes and with the objective medical evidence. (R. 27).

Dr. Reiher saw Plaintiff for a consultative examination on January 10, 2014. He observed Plaintiff to have normal gait and grip strength, full bilateral motor strength, and normal range of motion. (R. 518). He opined that she could sit for eight hours and stand and walk for six hours in an eight-hour workday. (R. 519). He stated she did not require an assistive device for ambulation. (*Id.*). Finally, he opined that she could lift ten pounds frequently for two-thirds of a workday. (*Id.*). The ALJ granted partial weight to Dr. Reiher's opinion, finding the assessment of plaintiff's ability to sit, stand, and walk was consistent with the medical evidence, but that the assessment of plaintiff's ability to lift only ten pounds was inconsistent with Dr. Reiher's own examination findings. (R. 27).

The state agency medical consultants at the initial and reconsideration levels reviewed the record in 2014. They opined that Plaintiff could sit and stand or walk for six hours in a workday, and lift twenty pounds occasionally and ten pounds frequently. (R. 74, 101). They found Plaintiff could occasionally climb ramps, stairs, and ladders, and occasionally balance, stoop, kneel, crouch, and crawl. (R. 75, 012). The ALJ gave these opinions significant weight, reasoning they were supported by specific evidence from the record. (R. 27). The ALJ also found that any evidence submitted after the consultants' review did not support any greater functional limitations. (*Id.*).

The Court finds no error with the ALJ's decision to give little weight to Dr. Conway's opinion, and that the ALJ adequately explained his reasons for doing so. It is well-established that "[a]n ALJ is not required to give deference to a claimant's treating physician's opinion

8

where that opinion, as here, is 'not consistent with other substantial evidence in the record.'" *Wavercak v. Astrue*, 420 F. App'x 91, 93-94 (2d Cir. 2011) (quoting *Halloran v. Barnhart,* 362 F.3d 28, 32 (2d Cir. 2004)). Here, Dr. Conway's fairly restrictive opinion was inconsistent with his own treatment notes. In 2014, Dr. Conway observed Plaintiff had been diagnosed with multiple sclerosis for thirty years, and in recent years she had experienced "only mild fluctuations in motor function and sensation – and no prolonged exacerbation of consequence." (R. 772). And, his treatment notes reveal largely normal examination findings for gait and strength. (*See* R. 764, 773, 917). In addition, Dr. Conway's opinion is inconsistent with records from other treatment providers. Dr. Tandon, Plaintiff's primary care physician, wrote in March 2012 that Plaintiff's multiple sclerosis does not seem to limit her daily activities. (R. 449). She also advised Plaintiff to exercise five times per week to lose weight. (R. 450). The record also shows normal findings from Plaintiff's orthopedic physician in September 2014. (R. 629). And, Dr. Reiher observed normal upper extremity strength, normal range of motion, and normal grip strength. (R. 518). Finally, Dr. Conway's opinion is inconsistent with Plaintiff's statements regarding her activity level. At the hearing, Plaintiff testified that she is able to do chores, mop, do laundry, sew, and grocery shop. (R. 48-49). She also testified she can "multi-task and do different things" to keep "busy all day." (R. 50). Likewise, Plaintiff told Dr. Reiher she could drive, vacuum, cook, and do dishes. (R. 517). In all, given the evidence in the record that fails to support and is inconsistent with Dr. Conway's restrictive opinion, the ALJ did not err by giving it little weight. *See Rusin v. Berryhill*, 726 F. App'x 837, 839 (2d Cir. 2018) (holding opinion of claimant's treating physician was not entitled to controlling weight when it was inconsistent with treatment notes, diagnostic observations, other opinion evidence, and claimant's reported activities of daily living); *Wavercak*, 420 Fed.App'x at 94 (holding ALJ

9

not requiring to give controlling weight to a treating physician opinion when it was inconsistent with other medical opinions and claimant's description of his daily activities).

There is also no error with the ALJ's decision to give Dr. Reiher's opinion partial weight. Dr. Rehier's lifting assessment was inconsistent with his own examination, which revealed normal upper extremity motor strength. (R. 917). The lifting assessment was also inconsistent with Plaintiff's statements at the examination that she could cook, shop, clean, and drive a car. (*Id.*). The ALJ was permitted to give only partial weight to Dr. Reiher's opinion. *See Barry v. Colvin*, 606 F. App'x 621, 624 (2d Cir. 2015) (finding an ALJ can discount a portion of a consultative examiner's opinion that was inconsistent with other record evidence).

Finally, the ALJ did not err in giving great weight to the opinions of the state agency medical consultants. The opinion of a non-examining source can override the opinion of a treating source when it is supported by the medical evidence. *See Diaz v. Shalala*, 59 F.3d 307, 313 n.5 (2d Cir. 1995) ("[T]he regulations … permit the opinions of nonexamining sources to override treating sources' opinions provided they are supported by evidence in the record."). Here, the consultants provided support for their opinions. Although some medical evidence was submitted after their review, the ALJ appropriately noted that the additional evidence did not demonstrate any greater functional limitations, and Plaintiff has not argued that it does. In all, the ALJ did not err in relying on the opinions of the state agency medical consultants. *See Camille v. Colvin*, 652 F. App'x 25, 28 (2d Cir. 2016) (an ALJ can find a non-examining source's opinion "more reliable" than an opinion of a treating source).

To conclude, the Court finds that the ALJ's weighing of the opinion evidence, and his explained reasons for the weight given, was not in error in this case. While the record contains some conflicting evidence, the ALJ was entitled to resolve it in the manner in which he did. *See*

*Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (explaining that when the record contains evidence pointing both ways, the ALJ's factual findings are conclusive as long as they are supported by substantial evidence).

### B. *Additional Limitations*

In assessing a claimant's RFC, the ALJ must consider objective medical evidence and medical opinions, as well as the claimant's subjective symptoms. *See* 20 C.F.R. § 404.1545(a)(3). Plaintiff bears the burden of proving she cannot perform the assessed RFC. *See* 20 C.F.R. § 404.1545.

Although Plaintiff claims that the RFC should have included greater limitations in her ability to handle and finger, the treatment records fails to support any additional limitations were required. As set forth above, the record evidences largely normal physical examination findings relating to the upper extremities. Plaintiff also argues the RFC should have included limitations for off-task behavior caused by pain from her lumbar and cervical degenerative condition and urinary frequency. As discussed above, however, Plaintiff has failed to show that the conditions resulted in any significant limitations in her ability to perform work activities. There is simply insufficient record support that Plaintiff required a limitation for off-task behavior. In sum, the Court finds that the ALJ's RFC determination is supported by substantial evidence.

### 3. **Credibility Assessment**

Finally, Plaintiff argues that the ALJ erred in evaluating her credibility. Specifically, she claims that the ALJ should have mentioned her strong work history in his credibility assessment. The Commissioner argues that the ALJ was well-aware of Plaintiff's work history and was not required to specifically reference it in his credibility assessment.

In evaluating a claimant's credibility, the ALJ is required to take into account the claimant's reports of pain and other limitations. 20 C.F.R. § 404.1529. The ALJ is not, however, required to accept the claimant's subjective complaints without question. *Taylor v. Astrue,* No. 3:09-cv-1049, 2010 WL 7865031, at *9 (D. Conn. Aug. 31, 2010). Instead, the ALJ must weigh the credibility of the claimant's complaints in light of the other evidence of record. The regulations set forth a two-step process for this evaluation. First, the ALJ must determine whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged. 20 C.F.R. § 404.1529(a). Next, the ALJ must determine "the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" of record. *Id.*

"As a fact-finder, the ALJ has the discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence." *Pietrunti v. Dir., Office of Workers' Comp. Programs*, 119 F.3d 1035, 1042 (2d Cir. 1997) (internal quotation marks omitted). In assessing credibility, "an ALJ must consider the entire case record, and '[o]ne strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record.'" *Mack v. Astrue*, No. 3:09-cv-2122 JBA, 2011 WL 1215075, at *4 (D. Conn. Mar. 27, 2011) (citing SSR 96–7p, 1996 WL 374186, *5 (S.S.A. July 2, 1996)).

The Court finds that substantial evidence supports the ALJ's credibility finding. Specifically with respect to Plaintiff's work history, the ALJ's decision demonstrates that he was well-aware of Plaintiff's employment background; the entire Step Four discussion lays it out. (*See* R. 28-29). And, work history is only one factor among several relevant to a credibility assessment. *See Campbell v. Astrue*, 465 F. App'x 4, 7 (2d Cir. 2012) ("Although it is true that a

good work history may be deemed probative of credibility, it remains just one of many factors appropriately considered in assessing credibility.") (internal quotations marks and citation omitted). Here, the ALJ appropriately considered Plaintiff's activities of daily living and the objective medical evidence in evaluating credibility. While an ALJ cannot equate activities with daily living with an ability to perform work on a full-time, sustained basis. the ALJ did not do that here. Rather, the ALJ considered Plaintiff's significant daily activities, along with the other evidence in the record, and made a credibility determination supported by substantial evidence. When, as here, the ALJ's credibility assessment is supported by substantial evidence, that a claimant's "good work history was not specifically referenced in the ALJ's decision [will] not undermine the credibility assessment." *Wavercak*, 420 F. App'x at 94.

Finally, it is the function of the Commissioner, not this Court, to appraise the credibility of the claimant. *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). "Credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are 'patently unreasonable.'" *Pietrunti*, 119 F.3d at 1042 (quotation omitted). There is no such unreasonableness here.

## Conclusion

In all, when the Court applies, as it must, the substantial evidence standard, it is required to affirm the decision of the Commissioner in this case. "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier*, 606 F.3d at 49 (internal quotations marks omitted). This means that when the medical evidence "is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *McIntyre*, 758 F.3d at 149.

13

Therefore, after a thorough review of the record and consideration of all arguments Plaintiff has raised, the Court finds that the ALJ did not commit legal error and that his opinion is supported by substantial evidence. Accordingly, the Court grants Defendant's Motion to Affirm and denies Plaintiff's Motion to Reverse.

This is not a recommended ruling. The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. Appeals can be made directly to the appropriate United States Court of Appeals from this judgment. *See* 28 U.S.C. § 636(c)(3); Fed.R.Civ.P. 73(c). The Clerk is directed to enter judgment in favor of the defendant and close this case.

SO ORDERED, this  4th  day of February, 2019, at Bridgeport, Connecticut.

 */s/ William I. Garfinkel*
WILLIAM I. GARFINKEL
United States Magistrate Judge